Dorothy J. TOTTEN, et al.

v.

UNITED STATES of America.

No. CIV-4-84-27.

United States District Court,
E.D. Tennessee,
Winchester Division.

Sept. 11, 1985.

Donal E. Overton and J.D. Lee, Knoxville, Tenn., for plaintiffs.

Joanne I. Schwartz, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM and ORDER

HULL, District Judge.

This is a wrongful death action brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Plaintiff's husband, Arthur C. Totten, Jr., was killed in a rocket propellant fire while working at the United States Air Force Arnold Engineering Development Center [Air Force]. Mr. Totten, an employee of Aerojet Strategic Propulsion Company [Aerojet], was engaged in a post-accident clean up operation following an MX2 rocket test failure. Aerojet and several other private companies were under contract with the Air Force to design, fabricate, and manufacture the MX missile.

This action is before the Court on a motion for summary judgment, Rule 56(b), Federal Rules of Civil Procedure, filed by the United States. In support of its motion, the United States contends that it cannot be held liable for the negligence of its independent contractor Aerojet; that it is entitled to the "statutory employer" protection afforded by Tennessee workers compensation laws; that it cannot be held strictly liable on any theory which would suggest it had a "non-delegable" duty regarding the safety of those working with ultra-hazardous materials; and that, in any event, it was performing a discretionary function in regard to the accident and is therefore protected from liability pursuant to 28 U.S.C. § 2680(a). The United States has provided affidavits attesting to the fact that, under the terms of its contract with Aerojet, Aerojet was responsible for the safety and health of its employees; Aerojet supervised the day-to-day performance of its contract; and the United States reserved the right of oversight and inspection of any system developed by Aerojet and the right to terminate the contract in the event of safety violations.

 This Court has already agreed that the United States cannot be held liable for the negligence of its independent contractors. *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). It would also agree that the mere reservation of a right to inspect in a contract such as the one governing Aerojet's relationship with the Air Force does not impose on the United States a duty to inspect or control the operations. *Gowdy v. United States*, 412 F.2d 525 (6th Cir. 1969). It also agrees that no form of strict liability for engaging in ultra-hazardous activity can be imposed on the United States under the limited waiver of immunity in the Federal Tort Claims Act. *Dalehite v. United States*, 346 U.S. 15, 44–45, 73 S.Ct. 956, 972–73, 97 L.Ed. 1427 (1953).

However, the Court does not find that the plaintiffs seek to hold the defendant strictly liable, or that the statutory employer protection is relevant to this action. Plaintiffs seek to hold the defendant liable for actual negligence on the part of Air Force personnel. Apparently, after the MX missile test failure the Air Force convened a committee to investigate the failure. Part of this investigation was to remove "evidence" in the form of the fuel which had spilled in the test silo. Plaintiffs contend that the removal was orchestrated, supervised, and participated in by Air Force personnel. The testimony of Lt. Colonel Richard Rinkel, USAF, indicates that Air Force personnel and people from three contractors (Aerojet, Sverdrup, and Pan Am) worked together "as a team". [Rinkel, p. 6, Exh. 3 to Doc. 10]. At a series of meetings, the group devised a protocol for the clean up operations and completed a mandatory Project Safety Review Form 7. The actual form prepared is in the record as part of the "J4 Test Cell 27 Nov 82 Accident Investigation". [Exh. 5 to Doc. 10]. It is evident even to a layman

that the people preparing the hazard analysis did not consider fire an important risk. The worst case hazard was believed to be toxic gas and the form states "recovery will be accomplished without a firetruck and fire personnel on site." Various Air Force personnel signed the project safety review form indicating "final coordination and approval." Plaintiff's expert Hyla S. Napadensky, Director of Research Explosion Science and Engineering, IIT Research Institute, Chicago, Illinois, has testified by deposition that the preliminary hazard analysis was not properly performed and failed to follow the specifications of military standard MIL–STD 882A (hazard analysis). She states that obvious fire precautions were not specified in the protocol such as the use of non-static clothing and non-sparking tools. It is the plaintiffs' contention in this action that the Air Force was required to follow the military standards; that failure to follow them was negligence *per se;* and that in signing its approval of the clean up protocol, the Air Force failed to exercise proper supervisory control over the project.

It is evident to the Court that the dispositive issue is whether or not the Air Force personnel who approved the clean up operation (with its apparently deficient hazard analysis) were performing a discretionary function. If they were performing a discretionary function, the United States is entitled to the protection of 28 U.S.C. § 2680(a), and must prevail in its summary judgment motion.

The discretionary function exception excludes governmental liability for:

[a]ny claim ... based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the government, whether or not the discretion involved be abuse.

28 U.S.C. § 2680(a).

The seminal Supreme Court decision construing the discretionary function exception is *Dalehite, supra. Dalehite* was a Federal Tort Claims Act case arising out of a disastrous explosion of amonium nitrate fertilizer produced at the specifications of, and under the control of, the United States. The *Dalehite* court said:

The "discretion" protected by the section is not that of the judge—a power to decide within the limits of positive rules of law.... It is the discretion of the executive or the administrator to act according to one's judgment of the best course....

[It] includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion.

346 U.S. at 34, 35–36, 73 S.Ct. at 967–68. In *Dalehite*, much as in the case at bar, ultra-hazardous materials were being handled and the government might well have done further experimentation concerning the safety of the product and made a plan for handling possible explosions. In addition, it should have better regulated the storage and shipping of the fertilizer. These acts of poor judgment were protected from liability by the discretionary function exception of 28 U.S.C. § 2680(a).

In a much more recent decision, *United States v. Varig Airlines*, 467 U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the Federal Aviation Administration had negligently certified an aircraft design as safe despite clear violations of governmental fire protection standards. In addition, it certified for installation a cabin heater that was in violation of FAA safety regulations. Even in this situation, where arguably an inspector has no "discretion" to violate a federal regulation, the United States was found to be protected from liability by Section 2680(a). The *Varig* court wrote:

When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory pro-

gram; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding.... Judicial intervention in such decision-making through private tort suits would require the courts to "second-guess" the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent.

104 S.Ct. at 2768.

 In the case at issue, it appears that Aerojet prepared a plan for the removal of the rocket propellant which did not have the requisite hazard analysis and did not comply with military safety regulations. Air Force officers approved the plan and signed the Form 7 protocol. These unfortunate decisions appear sufficiently analogous to the negligent decisions in *Dalehite* and *Varig* to mandate a ruling that Section 2680(a) protects the United States from liability in this case as well. The mere fact that controlling military safety regulations were not followed does not, of itself, give rise to a cause of action in tort and while this may be evidence of negligence *per se*, the discretionary function exception of Section 2680(a) protects the United States from liability even when negligence can be proved.

Accordingly, it is ORDERED that the motion of the United States of America for summary judgment, Rule 56(b), Federal Rules of Civil Procedure, is hereby GRANTED, and this action is DISMISSED.