Dorothy J. TOTTEN,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 85–5921.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 8, 1986.

Decided Dec. 9, 1986.

J.D. Lee, Knoxville, Tenn., Betty Phillips (argued), for plaintiff-appellant.

Charles S. Siegel, Baron & Budd, Dallas, Tex., for amicus, Daniel Harmon, Esley Douglas Tipton and Mark Fortney.

Joanne I. Schwartz (argued), Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KEITH and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a summary judgment in favor of the United States in an action brought under the Federal Tort Claims Act. We shall affirm the judgment.

In 1978 the United States Air Force contracted with Aerojet Strategic Propulsion Co. to design, fabricate, and manufacture a booster motor for the MX2 missile. Under the terms of the contract Aerojet assumed responsibility for the safety of its employees and for their day-to-day supervision. The United States reserved the right to oversee and inspect Aerojet's work and to terminate the contract for safety violations.

A missile test failure caused a quantity of solid fuel to fall to the bottom of a test silo at Arnold Air Force Station, in Tennessee, and the Air Force convened a committee to investigate the failure and arrange for cleaning up the site. The committee consisted of Air Force personnel and employees of three contractors, including Aerojet. Only Aerojet employees were involved in the clean-up operation on a daily basis. The plaintiff's husband, Arthur C. Totten, an Aerojet employee, was engaged in "cutting" the fuel on November 22, 1982, when the propellant ignited. Mr. Totten was killed. His widow filed suit under the Federal Tort Claims Act, alleging, among other things, that the Air Force had failed to comply with a Department of Defense "Military Standard" which was claimed to require that non-static clothing and non-sparking tools be used in the cutting operation. The plaintiff also alleged that the government had been negligent in

failing to have fire fighting equipment standing ready at the site.

The district court granted summary judgment, 618 F.Supp. 951, for the government on the ground that the Air Force was engaged in a discretionary function as to which Congress has not waived the government's immunity from suit.

The Federal Tort Claims Act grants federal courts jurisdiction (and thus waives governmental immunity) with respect to suits seeking money damages against the United States

> "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

There is an exception to this waiver of immunity with respect to

> "[a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court first analyzed the discretionary function exception in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Fertilizer that had been produced by private contractors under the direction of the federal government was loaded aboard ships destined for areas occupied by allied forces after World War II. The fertilizer, which contained ammonium nitrate (long used to make explosives), ignited. Two ships exploded, with disastrous consequences. Approximately 300 claims for personal injury and property damage were filed against the United States.

The Court divided the types of negligence alleged into three categories: "those which held that the Government had been careless in drafting and adopting the fertilizer export plan as a whole, those which found specific negligence in various phases of the manufacturing process and those which emphasized official dereliction of duty in failing to police the shipboard loading." *Id.* at 23–24, 73 S.Ct. at 961–62. The Court held that all three types fell within the discretionary function exception, thus precluding governmental liability.

The legislative history of the Act indicates, said the Court, that Congress was drawing a distinction between torts committed in the course of such routine activities as the operation of a motor vehicle and those associated with activities of a more obviously governmental nature. *Id.* at 27–28, 73 S.Ct. at 963–64. The "discretion" referred to in the statute "is the discretion of the executive or the administrator to act according to one's judgment of the best course." *Id.* at 34, 73 S.Ct. at 967.

> "It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion." *Id.* at 35–36, 73 S.Ct. at 967–68 (footnotes omitted).

In finding that the alleged negligence did not subject the government to liability, the Court stated that "[t]he decisions held culpable were all responsibly made at a planning rather than operational level and in-

volved considerations more or less important to the practicability of the Government's fertilizer program." *Id.* at 42, 73 S.Ct. at 971.

In a more recent case, *United States v. Varig Airlines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), 124 persons aboard a commercial aircraft owned by Varig Airlines died of asphyxiation and the effects of toxic gases when a fire broke out in a wastepaper receptacle. Varig Airlines and family and representatives of the passengers brought suits against the government, alleging that a predecessor of the Federal Aviation Administration had negligently issued a "type certificate" to the plane's manufacturer notwithstanding that the plane did not comply with the agency's fire protection standards. Although the manufacturer was responsible for the inspection and testing necessary to establish that the aircraft met the standards, it was the agency's practice to spot-check the manufacturer's work before issuing the certificate.

The Court held the discretionary function exception applicable, stating:

"The FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the 'nature and quality' protected by § 2680(a). When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program ... Judicial intervention in such decisionmaking through private tort suits would require the courts to 'second-guess' the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policy-making that the discretionary function exception was designed to prevent." *Id.* at 819–20, 104 S.Ct. at 2768–69.

The Court went on to hold that the acts of the FAA's employees in executing the "spot-check" review fell within the discretionary function exception because those employees were specifically granted authority to make policy judgments regarding the extent to which a particular manufacturer's work would be reviewed. *Id.* at 820, 104 S.Ct. at 2768.

The plaintiff in the present case argues that the failure to require that fire equipment be available at the site and that static-free clothing and spark-free tools be used during the cutting operation does not come under the discretionary function exception because, in planning the clean-up operation, the Air Force personnel were "simply selecting materials that would be needed for the rocket fuel clean-up." The work included not only removal of the fuel, however, but also an investigation of the cause or causes of the test failure. It was decided that the fuel would be removed in a particular manner and observations made of the fuel for this investigative purpose. Both aspects of the operation involved discretionary decisions based not only on safety but also on such considerations as budgetary and time constraints and the availability of personnel with expertise in solid fuel clean-up. Although *Varig* involved inspection and review in a regulatory context, we see no reason why the method of analysis employed in *Varig* is not equally applicable here.

This court has explicitly held the discretionary function exception applicable to alleged negligence in the delegation of safety responsibilities to a government contractor. In *Feyers v. United States,* 749 F.2d 1222, 1223 (6th Cir.1984), an employee of Chrysler Corporation was injured when he attempted to couple two United States Army railroad cars at a tank plant owned by the United States and operated by Chrysler. The contract between the government and Chrysler provided that Chrysler was to comply with the provisions of a specified safety manual, and that the government was to make "periodic spot reviews" of Chrysler's safety procedures. With respect to the plaintiff's claim that the United States had been negligent in delegating

the responsibility for safety to Chrysler, this court held,

"The United States' decisions to delegate safety responsibility to Chrysler, to conduct only 'spot checks' of Chrysler's safety programs, and to not institute a safety training program for railyard workers are clearly the type of discretionary functions protected by 28 U.S.C. § 2680(a).... The decision to rely on the 'spot checks' or annual review along with accident rates to establish safety priorities is, in essence, a policy decision, involving the exercise of discretion. Although Chrysler was required to comply with the AMC Safety Manual AMC 385–100, that manual did not describe railroad safety procedures. Further, the decision to delegate responsibility for safety to Chrysler was based on a perception by government negotiators that Chrysler was a prudent contractor capable of implementing its own safety program." *Id.* at 1227 (footnotes omitted).

■ In the present case, as in *Feyers*, the United States delegated responsibility for safety to the contractor. The government knew that Aerojet had fourteen years of experience in cutting solid fuel propellants, and it was no more unreasonable for the government to rely on Aerojet's expertise than on Chrysler's; in any event, reasonable or not, the decision to delegate was discretionary, and thus could not subject the government to liability.

■ The plaintiff alleges that the Air Force failed to comply with the requirements of Military Standard 882A, a "technical information" document issued by the Department of Defense in June of 1977. The document says that all military departments and agencies are to develop "system safety programs" for all phases of a weapon system's "life cycle," including research and development, test and evaluation, and production. The Air Force appears to have established a system safety program pursuant to a predecessor of the 1977 edition of MIL–STD 882A; the contract with Aerojet specifies that Aerojet is to comply with

"MIL–STD–1574 (USAF) 77 Mar 15, System Safety Program for Space and Missile Systems." Air Force Military Standard 1574 was not offered in evidence.

Department of Defense Military Standard 882A is a very generally worded document which, by its terms, is to be "reviewed by the managing [Air Force] activity to determine extent of applicability. Tailoring may take the form of deletion, alteration, or addition ... to adapt this standard to specific system characteristics, program management options, contractual structure or life cycle phases." MIL–STD 882A § 1.3.4. The Standard specifies that the objective of the system safety program is to achieve "[t]he *optimum* degree of safety *within the constraints of operational effectiveness, time, and cost* attained through specific application of system safety management and engineering principles whereby hazards are identified and risk minimized throughout all phases of the system life cycle." MIL–STD 882A §§ 4.1(a), 3.7 (emphasis supplied). The document thus clearly directs the Air Force and other military departments to exercise discretion in adapting the standard to individual weapon system operations.

Because an exercise of discretion was required in implementing Standard 882A and in determining the extent to which the government should review Aerojet's compliance with the safety responsibility delegated to it, the plaintiff's claim falls within the discretionary function exception to the Federal Tort Claims Act. The United States has not consented to be sued on such claims, and the judgment of the district court is therefore AFFIRMED.