Mark Lynn FORTNEY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Esley W. TIPTON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Daniel Webster HARMON, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 83–0200–A, 83–0201–A, 83–0202–A.

United States District Court, W.D. Virginia, Abingdon Division.

April 21, 1987.

Stephen A. Vickers, Bristol, Va., Brian D. Weinstein and Russell W. Budd, Dallas, Tex., Edwin C. Stone, Radford, Va., for plaintiff.

Thomas R. King, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

These three consolidated cases are presently before the court for judgment following a bench trial.

The Radford Army Ammunitions Plant ("R.A.A.P.") is a munitions factory that the United States Army owns. The Army has contracted with Hercules, Inc. ("Hercules") to operate R.A.A.P. Hercules is responsible for safety at R.A.A.P. (Plaintiffs' Exhibits 9, 98–99, and 192); but the Army has retained the right to inspect the premises for quality, security, and safety and, consequently, maintains a small staff at the plant.

One of the intermediate processes that Hercules carries on at R.A.A.P. is the dehydration of nitrocellulose. In the 1960's Hercules began experimenting with automating this process, and in December 1980 Hercules instigated a trial period for one specific automated dehydration system. On May 6, 1981 this experimental system exploded severely burning plaintiffs; and they subsequently brought suit pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80, alleging that the government had failed to use reasonable procedures to assure that Hercules utilized necessary safety precautions in its performance of hazardous work.

The FTCA largely abrogates the federal government's immunity from tort liability. However, the FTCA preserves that immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exemption from tort liability is commonly referred to as the discretionary function exception ("d.f.e.").

The Supreme Court first explored the d.f.e. in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In *Dalehite* fertilizer that had been produced as part of a government program to aid war ravaged countries exploded aboard a ship levelling much of Texas City, Texas and killing many persons; and plaintiffs sued for negligent manufacture.[1] The Court held the United States was not liable because the d.f.e. protects the government from tort liability for "the discretion of the executive or the administrator to act according to ... [his] judgment of the best course ..." *Dalehite*, 346 U.S. at 34, 73 S.Ct. at 967. The Court then explained that the d.f.e. "includes more than the iniation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operation." *Dalehite*, 346 U.S. at 35–36, 73 S.Ct. at 967–968. Finally the Court extended this immunity to the "acts of subordinates in carrying out the operations of government in accordance with official directions." *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968.

The Court further developed the parameters of the d.f.e. in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), ("*VARIG*"). In *VARIG* two commercial aircrafts that the Federal Aviation Administration ("FAA") had certified as airworthy caught on fire midair due to the existence of non-regulation equipment. The Court held the FAA was not liable in tort for its decision to delegate some inspection responsibility to aircraft manufacturers and to only conduct spot checks. The Court explained:

When an agency determines the extent to which it will supervise the safety pro-

---

1. One of the ingredients of the fertilizer was a commonly recognized explosive.

cedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding. Here, the FAA has determined that a program of 'spot-checking' manufacturers' compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources. Judicial intervention in such decisionmaking through private tort suits would require the courts to 'second-guess' the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policy-making that the discretionary function exception was designed to prevent.

*VARIG*, 467 U.S. at 819–20, 104 S.Ct. at 2767–68. The Court also indicated that it is the "nature of the conduct, rather than the status of the actor" that determines applicability of 28 U.S.C. § 2680(a). *VARIG*, 467 U.S. at 813, 104 S.Ct. at 2764.

Applying the *Dalehite* and *VARIG* analyses to the instant facts indicates the government is not liable in tort for failure to use reasonable procedures to assure that Hercules utilized necessary safety precautions. The government's decisions concerning the production of munitions including its delegation to Hercules of primary responsibility for safety furthers the objectives of our national defense and, consequently, represent the nature of conduct that the d.f.e. excepts from tort liability. And, as the Court has indicated, this immunity necessarily applies to lower level decision makers as well.

The Sixth Circuit has decided two cases that provide additional support for this court's analysis. In *Feyers v. United States*, 749 F.2d 1222 (6th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272, a Chrysler employee was injured when working at a government owned facility pursuant to a contract between Chrysler and the United States. The Court held that the United States' decisions to delegate responsibility for safety to Chrysler, to only conduct spot checks of Chrysler's safety program, and to not institute a safety training program are the type of discretionary functions excluded from the FTCA's waiver of sovereign immunity. The Sixth Circuit, inter alia, examined the contract between Chrysler and the United States, which assigned responsibility for safety to Chrysler, and the relationship of Chrysler to the United States, which was independent contractor rather than employee. And in *Totten v. United States*, 806 F.2d 698 (6th Cir.1986), the widow of a former employee of an independent contractor sued the government for failure to comply with a Department of Defense standard and for failure to assure use of safety precautions after her husband was killed when cleaning up missile fuel pursuant to a contract between the independent contractor and the government that delegated primary safety responsibility to the independent contractor. The Court held the d.f.e. precludes tort liability for the underlying decisions "[b]ecause an exercise of discretion was required in implementing [Department of Defense] Standard 882A and in determining the extent to which the government should review Aerojet's compliance with the safety responsibility delegated to it." *Totten*, at 702.

This court cannot distinguish the instant facts from *Feyers* or *Totten* in regard to the nature of the underlying contract: all three contracts delegate primary responsibility for safety to the independent contractor with the government's retaining the right to review safety procedures. As the *VARIG* Court indicated, this delegation of safety responsibility represents the type of policy-making for which the d.f.e. was designed.

Accordingly, 28 U.S.C. § 2680(a), the discretionary function exception, bars plaintiffs' suits against the United States. Case law is clear that "[i]f a case falls within the statutory exceptions of 28 U.S.C. § 2680,

the Court lacks subject matter jurisdiction." *Feyers v. United States,* 749 F.2d at 1225. Consequently, these cases are dismissed for lack of subject matter jurisdiction.

In accordance with this Memorandum Opinion, an Order will be entered dismissing these cases for lack of subject matter jurisdiction and striking these cases from the docket.