**Lorene ELLIS, et al., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 89–C–0045–S.

United States District Court,
D. Utah, C.D.

Sept. 11, 1991.

W. Brent Wilcox, Wilcox, Dewsnup & King, Salt Lake City, Utah, Jeff R. Thorne, Mann, Hadfield & Thorne, Brigham City, Utah, Herm Olsen, Hillyard, Low & Anderson, Logan, Utah, for plaintiff.

Stuart E. Schiffer, Paul F. Figley, Sally M. Rider, Washington, D.C., Dee V. Benson, Joseph W. Anderson, U.S. Atty.'s Office, Salt Lake City, Utah, Sally M. Rider, Daniel R. Unumb, U.S. Dept. of Justice, Torts Branch—Civil Div., Washington, D.C., for defendant.

## MEMORANDUM DECISION

SAM, District Judge.

This matter is before the court on the motion of the defendant United States of America to dismiss or, in the alternative, for summary judgment.[1]

The United States urges that plaintiffs' claims are jurisdictionally barred because they arise from the alleged negligence of a contractor with the United States, the United States owed plaintiffs' decedents no actionable duty, and that this court is without subject matter jurisdiction because plaintiffs' claims are barred by the discretionary function exception to the Federal Tort Claims Act ("FTCA").

## FACTS

Plaintiffs are the survivors of three Morton Thiokol, Inc. ("Thiokol") employees who were killed when the rocket motor they were working on caught fire.

In order to deploy the Peacekeeper missile, the United States Air Force entered into a facilities and production contract with Thiokol for the design and manufacture of stage one motors for the Peacekeeper missile. The contract was to be performed at Air Force Plant 78 ("Plant 78"), a government-owned contractor-operated facility located within Thiokol's Box Elder County, Utah operation site.

On December 29, 1987, during the core removal operations of the manufacture of a Peacekeeper stage one motor, a fire erupted in Building M592 at Plant 78 which killed five persons, including plaintiffs' decedents.

Pursuant to its contract with the Air Force, Thiokol was responsible for designing and manufacturing the Peacekeeper rocket motor. The United States did not supervise or control the day to day operations of Thiokol employees at Plant 78, and by contract, Thiokol was responsible for safety at Plant 78.

As of December 29, 1987, the Air Force Plant Representative Office ("AFPRO") located at Thiokol's Wasatch facility had a safety office consisting of two persons, and a manager who came on site in November 1987. The AFPRO safety personnel conducted random safety inspections of Thiokol's operations. In addition, the Ballistic Missile Office ("BMO") located at Norton Air Force Base in San Bernardino, California, also had a systems safety office monitoring sixty to eighty contracts. BMO personnel would periodically make visits to contractor facilities. BMO had the authority to order work stoppages if it was deter-

---

1. Defendant's motion was filed on April 24, 1991. On May 24, 1991, pursuant to plaintiffs' motion to enlarge time to respond to defendant's motion to dismiss, the court extended the time by which the parties were to file the remaining pleadings. Plaintiff's responsive pleading was filed June 28, 1991 and defendant's reply memorandum was filed July 16, 1991.

mined that Thiokol failed to comply with proper safety measures.

Although the government reserved the right to monitor Thiokol's performance, pursuant to its contract with the government, Thiokol remained responsible for safety at Plant 78 regardless of any act or failure to act by the government in the surveillance or enforcement of Thiokol's compliance with the contract safety requirements.

In May of 1987, approximately seven months prior to the fatal accident, Thiokol employees had a near-miss incident when there was a loud popping noise accompanied by a flash, smoke and fumes while they were extracting the core from Peacekeeper motor PK–303. The motor did not ignite and a safety team assembled by Thiokol concluded that the probable cause of the near-miss incident was electrostatic discharge of friction, initiated by the core being removed from the motor.

Prior to the near-miss incident, core removal procedures were performed by Thiokol employees inside the same building. A joint Thiokol–Air Force review of the near-miss incident resulted in corrective safety actions, the primary one being that core extractions were thereafter to be done by remote control from a bunker located some distance away.

Thiokol safety procedures, in place at the time of the accident, provided that no one should have been in the building during core removal operations.

## DISCUSSION

Defendant seeks dismissal of plaintiffs' complaint pursuant to Fed.R.Civ.P. Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, for summary judgment for failure to state a claim upon which relief can be granted. Defendant urges that three independent grounds exist for dismissing plaintiffs' action: (1) plaintiffs improperly seek to hold the government liable for Thiokol's negligence; (2) the government did not owe plaintiffs' decedents any actionable duty; and, (3) the FTCA discretionary function exception pre-

cludes recovery. The court addresses only the discretionary function exception.

■ The waiver of sovereign immunity is limited by what is referred to as the discretionary function exception. 28 U.S.C. § 2680(a) provides:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of the statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Plaintiffs must overcome the discretionary function exception as part of their burden to establish subject matter jurisdiction. *Miller v. United States,* 710 F.2d 656, 662 (10th Cir.1983), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983); *Baird v. United States,* 653 F.2d 437, 440 (10th Cir.1981).

■ In their complaint, plaintiffs generally allege that the government was negligent in fulfilling its role in the design and manufacture of the Peacekeeper missile, including the design and maintenance of the equipment, tooling, procedures and facilities used in its manufacture, as well as its review of Thiokol's activities in this regard. Plaintiffs also assert that the government was negligent in fulfilling its safety responsibility including the manner and details of the Air Force's inspection and monitoring of Thiokol's safety program and procedures.

The United States contends that plaintiffs' claims are barred by the discretionary function exception because the Air Force's conduct at issue in this case involved the permissible exercise of policy based judgment. The government's position is that as part of its policy that military supplies be procured by contract from private industry the government delegated to Thiokol the responsibility to design and manufacture the Peacekeeper missile including the delegation of full and primary responsibility for worker safety.

In response, plaintiffs first urge that the government employees had no discretion but were required to review the corrective actions resulting from the near-miss incident and to insure that they were implemented and effective. They point to an internal written policy which they allege required AFPRO to ensure Thiokol's compliance with corrective measures taken after the near-miss incident. They also point to a memorandum by AFPRO's program manager to his superiors to the effect that his office would ensure the effectiveness of the corrective actions. They further argue that even if AFPRO did not have an obligation to monitor the effectiveness of the corrective actions, the government once it exercised its discretion to monitor the corrective actions, was obligated to do so in a non-negligent manner.

The United States Supreme Court has used a two step analysis to determine the scope of the discretionary function exception:

First, a court must consider whether the challenged conduct "is a matter of choice for the acting employee" or whether it is specifically prescribed by a federal statute, regulation or policy. [Citation omitted] "[I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." [Citation omitted].

Second, if the employee's conduct is the product of judgment or choice, "a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." [Citation omitted]. The discretionary function exception was designed "to 'prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" [Citation omitted]. Therefore, under the second part of the test, a discretionary decision is only protected if "based on considerations of public policy." [Citation omitted].

*Zumwalt v. United States,* 928 F.2d 951, 953 (10th Cir.1991) (citing and quoting *Ber-*

*kovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)).

In the recent case of *United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 1274–1275, 113 L.Ed.2d 335 (1991), the Court further elaborated on the discretionary function exception.

When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

In *Gaubert* the Court further noted that "the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* 111 S.Ct. at 1274.

The general policy of military procurement as stated in the Department of Defense Authorization Act of 1982, 10 U.S.C. § 2301, is that:

The Congress finds that in order to ensure national defense preparedness, to conserve fiscal resources, and to enhance defense production capability, it is in the interest of the United States to acquire property and services for the Department of Defense in the most timely, economic and efficient manner. It is therefore the policy of the Congress that services and property (including weapon systems and associated items) for the Department of Defense be acquired by any kind of contract ... that will promote the interest of the United States.

As part of its policy to procure the Peacekeeper missile, the government, by contract, delegated to Thiokol the responsibility to perform and supervise the manufacture of the rocket motor from design through production, including the safety of its employees.

It is well established that government procurement decisions, such as establishing plans, specifications and schedules for the development and manufacture of products or the providing of services similar to those at issue in the instant case, involve elements of judgment or choice. *See e.g. Boyle v. United Technologies*, 487 U.S. 500, 511, 108 S.Ct. 2510, 2517, 101 L.Ed.2d 442 (1988); *Creek Nation Indian Housing Authority v. United States*, 905 F.2d 312 (10th Cir.1990); *Lively v. United States*, 870 F.2d 296, 298 (5th Cir.1989); *Bynum v. F.M.C. Corp.*, 770 F.2d 556, 569 (5th Cir.1985); *U.S. Fidelity & Guar. Co. v. United States*, 837 F.2d 116 (3rd Cir. 1988); *Totten v. United States*, 806 F.2d 698 (6th Cir.1986); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *General Public Utilities Corp. v. United States*, 745 F.2d 239 (3rd Cir.1984).

It is also well established that the decision to assign safety responsibility to a contractor cannot form the basis for tort liability against the government. *Totten v. United States*, 806 F.2d 698 (6th Cir.1986); *Feyers v. United States*, 749 F.2d 1222 (6th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985); *Maltais v. United States*, 546 F.Supp. 96 (N.D.N.Y. 1982).

In order to remove the conduct from the realm of discretion, a statute or regulation must be both mandatory and specific such that "the employee has no rightful option but to adhere to the directive." *Berkovitz v. U.S.*, 486 U.S. 531, 108 S.Ct. 1954, 1958–1959, 100 L.Ed.2d 531 (1988); *U.S. v. Gaubert*, 111 S.Ct. 1267, 1273 (1991). Plaintiffs have failed to allege any specific mandatory statutes or regulations which precluded any element of judgment or choice on the part of the government with respect to the complained of conduct. The

documents relied upon by plaintiffs, for the proposition that the government had no discretion, are couched in terms of "monitor" and "review." The court concludes that discretion is implied in those documents. *See Gaubert*, 111 S.Ct. 1267, 1270 (1991) (discussing that the discretionary function applies if discretion is "implied" in agency statutes, regulations or guidelines).

Plaintiffs also urge that once the government elected to act, such as review of corrective safety measures after the near-miss incident, failure to act in a non-negligent manner subjects the government to suit under the FTCA.

The court is not persuaded by plaintiffs' argument. If the challenged conduct is discretionary, which this court concludes it was, the exception applies even if negligence is alleged. *United States v. Gaubert*, 111 S.Ct. 1267 (1991); *Barnson v. United States*, 816 F.2d 549, 553 (10th Cir. 1987).

The court is of the opinion and finds that the government's procurement of the Peacekeeper missile, including the decision to delegate responsibility to a private contractor for its design and manufacture, along with related safety programs and procedures, was a permissible exercise of policy-based discretion which insulates the United States from liability.

As previously noted, the United States also urges dismissal on the independent grounds that plaintiffs' claims are jurisdictionally barred because they arise from the alleged negligence of a contractor with the United States and because it owed plaintiffs' decedents no actionable duty. The court, having concluded that the discretionary function exception applies to the facts presented and that it provides a sufficient basis for the court to dismiss plaintiffs' complaint, does not reach the other issues raised by plaintiffs.

Accordingly, defendant's motion to dismiss, pursuant to Fed.R.Civ.P., Rule 12(b)(1), for lack of subject matter jurisdiction, is granted.