Linda G. **HARPER**, Plaintiff,

v.

**LOCKHEED MARTIN ENERGY SYS-
TEMS, INC., and The United States
of America, Defendants.**

No. 3:97–CV–601.

United States District Court,
E.D. Tennessee,
at Knoxville.

Sept. 30, 1999.

Ann Rowland, Janet Edwards, Rowland & Rowland, Knoxville, TN, for plaintiff.

John C. Burgin, Jr., Thomas M. Hale and John B. Rayson, Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, TN, G. Wilson Horde and Robert M. Stivers, Jr., Lockheed Martin Energy Systems, Inc., Oak Ridge, TN, Leland S. Van Koten and Steven M. Talson, Department of Justice, Torts Branch, Washington, D.C., for defendant.

### ORDER

JARVIS, District Judge.

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that the defendant United States' motion to dismiss plaintiff's amended complaint [Court File # 17] is GRANTED. In addition, the following actions are taken with regard to other motions:

Plaintiff's motion for a temporary restraining order [Court File # 11] is DENIED AS MOOT;

The parties' joint motion for an extension of time in which to respond to defendant's motion to dismiss and reply to the same [Court File # 32] is GRANTED; and

Plaintiff's motion to file a deposition of Dr. Vince Adams in full [Court File # 36] is GRANTED.

### MEMORANDUM OPINION

This is an action originally brought in the Circuit Court for Roane County, Ten-

nessee, against Lockheed Martin Energy Systems, Inc. (Lockheed Martin) for trespass, nuisance and negligence arising from personal injury suffered by the plaintiff allegedly as the result of Lockheed Martin's storage, disposal and/or incineration of toxic and hazardous wastes at the K–25 Plant and the Toxic Substances Control Act Incinerator (TSCA incinerator) in Roane County, Tennessee. The action was removed to this court and, in an amended complaint, plaintiff also brought a claim against the United States under the Federal Torts Claims Acts (FTCA), 28 U.S.C. § 1346(b), *et seq.* Currently pending is the motion of the United States to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure [Court File #17], the United States contending that it has not waived its immunity to such a claim. The parties were given an opportunity to discover the facts surrounding Lockheed Martin's contractor status with the United States and whether plaintiff's allegations against the United States involved discretionary functions for which the United States would be immune. For the reasons that follow, the United States' motion [Court File #17] will be granted.

I.

*Factual Background*

The United States, through the Department of Energy (DOE), owns a number of facilities where work related to atomic energy is performed, and Oak Ridge, Tennessee, is the site of a number of such facilities. Since World War II, these government-owned sites and facilities, including those located in Oak Ridge, have been managed and operated for DOE by management and operating (M & O) contractors. These are unique contracts designed to facilitate long-term private management of government-owned facilities.

DOE has been given statutory authority to enter into contracts "for the conduct of research and development activities," 42 U.S.C. § 2051(a); "for the production of special nuclear material and facilities owned by the Commission," 42 U.S.C. § 2061(b); "for the processing, fabricating, separating, or refining in facilities owned by the Commission of source, by-product, or other material, or special nuclear material," 42 U.S.C. § 2201(t); "for the purchase or acquisition of reactor services or services related to or required by the operation of reactors," 42 U.S.C. § 2201(u); "for the conduct of research and development activities with private or public institutions or persons," 42 U.S.C. § 5817(a); or "to carry out functions now or hereinafter rested in the [DOE] Secretary," 42 U.S.C. § 7256. In addition, DOE imposes on its M & O contractors requirements for public and employee safety and health at its nuclear facilities. *See* 42 U.S.C. §§ 2051(d), 2061(b)(2)(B) and (C), 2201(1)(3), and 7274(m).

In the early 1940s, the United States entered into an agreement with Union Carbide and Carbon Corporation (later Union Carbide Corporation) to operate the United States' facilities at Oak Ridge. In 1984, Union Carbide did not bid on the Oak Ridge renewal contract, and Martin Marietta Energy Systems was the successful bidder. On March 30, 1984, Martin Marietta assumed M & O responsibilities at Oak Ridge. Lockheed Martin succeeded Martin Marietta as a result of the merger of Lockheed Aircraft and Martin Marietta.

The first M & O contract between DOE and Martin Marietta was dated March 30, 1984. Paragraph 14 of that contract addressed safety and health requirements as follows:

The Contractor shall take all reasonable precautions in the performance of the work under this contract to protect the safety and health of employees and members of the public and shall comply with all applicable safety and health regulations and requirements (including reporting requirements of DOE).

The contract also had provisions requiring the DOE Contracting Officer to notify the contractor of areas of non-compliance with

the safety and health provisions and corrective actions which must be taken by the contractor. In the event of contractor non-compliance with DOE's requirements, the Contracting Officer was authorized to issue a stop work order, and the contractor was prohibited from seeking compensation or damages for any such work stoppage.

Under its contract with the Department of Energy, Lockheed Martin operates the K–25 Plant and, at the east end of that plant, the TSCA incinerator, which is located on Blair Road. At the TSCA incinerator, toxic and hazardous wastes produced at K–25 and other DOE-owned facilities are disposed of. Plaintiff moved to a home located at 710 Poplar Creek Road in Oliver Springs, Tennessee, which is less than one mile from the TSCA incinerator, in June 1994. She claims that she was in good health and athletic until approximately October 1994, when she developed extreme fatigue and weakness. Since that time she has developed short term memory loss, cognitive deficits, episodic slurred speech, difficulty swallowing, episodic paralysis, dizziness, muscle and joint pain, shortness of breath, chest pain and cardiac abnormalities. She claims that she first learned in January 1997 that her illness was caused by exposure to toxic chemicals and/or metals, and she has been diagnosed as suffering from dementia due to toxicities and chemical encephalopathy. Plaintiff contends that the impairment of her physical condition was directly and proximately caused by inhalation of toxic and hazardous emissions from the K–25 Plant and TSCA incinerator operated by Lockheed Martin.

Plaintiff has submitted the deposition testimony of Dr. Vince Adams. Dr. Adams was one of two DOE employee at the TSCA incinerator from 1989 to 1997. While he was there, Dr. Adams and an associate monitored Lockheed Martin's approximately 80 to 90 contractor employees in their daily operation of the incinerator. Throughout his deposition, Dr. Adams makes it clear that he did not direct the day-to-day activities of Lockheed Martin's employees. Dr. Adams testified that his role in overseeing operations at the incinerator was:

> ... we've got these what we call prime contractors who are supposed to do the hands-on work, etc., and my role and the rest of the site office's role was just to kind of look over their shoulders to make sure that our policies and our philosophies are implemented and the program is implemented correctly to insure the health, safety, and environment is protected.

Dr. Adams testified that his practice was in accordance with DOE Order 5480.19, which states that DOE supervision of Lockheed Martin contract performance consists of "establishing written standards in operations, periodically monitoring and assessing performance, and holding personnel accountable for their performance."

Plaintiff points out that DOE is listed as a co-operator of the TSCA incinerator along with Lockheed Martin on the various permits authorizing the incinerator's operation. Even before this lawsuit was filed, DOE essentially denied that it was a co-operator of the incinerator in a letter dated September 21, 1989, from the Oak Ridge Manager to the Tennessee Department of Health and Environment. DOE denied as its role as a co-operator as follows:

> DOE has had difficulty all along in being responsive to TDHE on this issue [DOE/LMES listing as co-operators on an RCRA permit] because the Tennessee Waste Management rules define "operator" as the "person responsible for the overall operation of the facility." DOE owns the facilities to be covered by the RCRA permits, and everything in those facilities. The facilities are managed for DOE by Energy Systems [LMES] under a contract through which DOE retains control of the funds available for the operation of the facilities, DOE retains control over decisions as to what use or purpose those facilities may be put, and DOE retains control generally over the conditions under which

work may be performed at the facilities. Energy Systems [LMES] is responsible for managing the activities at the facilities on a day-to-day basis within guidelines received from DOE and, in the absence of such guidelines, within its best judgment, skill, and care. Energy Systems [LMES] does that through employees it hires and directs.

## II.

### Plaintiff's Allegations Against the United States

On July 7, 1998, plaintiff was allowed to amend her complaint to include an action against the United States under the FTCA. Plaintiff alleges that Lockheed Martin operated the K-25 Plant under contract with the United States Department of Energy; that DOE had a nondelegable duty to insure that appropriate preventative measures were taken to protect the plaintiff because of the toxic waste storage, disposal and incineration carried on at the K-25 Plant, which were "dangerous instrumentalities;" that DOE retained control over the toxic waste storage, disposal and incineration carried on at K-25, and all of the other processes associated with the shut-down and clean-up of uranium refining which occurred there; that DOE knew or should have known that the refining of uranium, all of the processes associated with the shut-down and clean-up of the refining process, and the associated waste storage, disposal and incineration of toxic wastes in the incinerator were ultrahazardous activities; that DOE knew or should have known of the trespass alleged in count one of her complaint, the nuisance as alleged in count two, and that Lockheed Martin was failing to perform its duties in a safe manner as alleged in count three; that DOE knew or should have known that plaintiffs and other similarly situated were not given adequate protection from the health hazards created by these acts or omissions; that DOE negligently failed to exercise reasonable care in controlling the operations of Lockheed Martin; that DOE negligently failed to protect the plaintiff from exposure to toxic emissions generated at the K-25 Plant; and that DOE negligently failed to warn plaintiff of the danger of exposure to the toxic emissions and the associated health risks. Plaintiff claims that as a proximate result of the United States' negligence, she has been injured personally, has incurred medical expenses and lost wages, and her real property has been damaged to the extent that it is no longer marketable.

## III.

### The FTCA and the Discretionary Function Exception

The FTCA is a limited waiver of the United States' sovereign immunity. The FTCA authorizes suits against the United States for damages caused by the tortious conduct of federal employees when such conduct would render a private actor liable under the law of the place where the conduct occurred. 28 U.S.C. § 1346(b). However, the FTCA does not permit claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused." 28 U.S.C. § 2680(a).

A two-step analysis is used to determine whether the discretionary function exception applies in a particular case. First, the court must determine whether the challenged conduct involves an element of judgment or choice. *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The exception "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Id.* Second, if the challenged conduct involves discretion, the court must determine whether that discretion is "of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322–23,

111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Thus, the court must determine whether the discretionary conduct was a policy decision. If so, the exception applies and shields the government from liability for the consequences of that conduct.

■ The United States Court of Appeals for the Sixth Circuit has twice explicitly held that the discretionary function exception is applicable to alleged negligence of the United States in the delegation of safety responsibilities to a government contractor. *See Totten v. United States*, 806 F.2d 698, 701 (6th Cir.1986); *Feyers v. United States*, 749 F.2d 1222, 1223 (6th Cir.1984). In addition, the discretionary function exception encompasses government decisions about the manner and extent to which the government supervises the safety procedures of independent contractors. *Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660. The retention of open-ended supervisory authority that "allow[s] the government employees to exercise choice and discretion" does not render the exception inapplicable. *Domme v. United States*, 61 F.3d 787, 791 (10th Cir.1995).

Plaintiff's claims against the United States can be broken down as follows:

(1) The United States breached a non-delegable duty to protect the plaintiff from dangerous instrumentalities such as the alleged toxins emitted from the incinerator;

(2) The United States failed to require its contractor Lockheed Martin to perform its duties in a safe manner while carrying on ultrahazardous activities; and

(3) The United States failed to warn the plaintiff of the danger created by the toxic emissions from the incinerator.

I am of the opinion that each of the above alleged activities of the United States are subject to the discretionary function exception.

First, the United States Court of Appeals for the Sixth Circuit has explicitly held that the discretionary function exception is applicable to alleged negligence in the delegation of safety responsibilities to a government contractor. *Totten v. United States*, 806 F.2d 698, 701 (6th Cir.1986). Such cases recognize that the government may delegate such duties to government contractors and no exception is created if the dangers created are the result of "dangerous instrumentalities." The language of plaintiff's amended complaint describing "dangerous instrumentalities" and "ultrahazardous activities" suggests that plaintiff is attempting to raise a strict liability claim against the United States. The discretionary function exception shields the government from liability under theories of strict liability. *See Andrews v. U.S.*, 121 F.3d 1430, 1441 (11th Cir.1997).

The United States may not be liable for negligent failure to supervise Lockheed Martin. The discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of independent contractors. *Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (FAA's decisions to delegate responsibility for inspecting aircraft to manufacturing manager and to conduct "spot check" monitoring of manufacturer are discretionary acts).

With respect to plaintiff's failure to warn claim, the government's decision with regard to dangers that might result from living close to the incinerator is a policy decision and therefore that decision is protected by the discretionary function exception.

All of the claimed negligence against the United States involves the element of

judgment or choice and therefore the first part of the two-part test is satisfied. An exception under *Berkovitz* can occur when a federal statute, regulation, or policy specifically prescribes a course of action for a government employee to follow and that prescription has been ignored. Plaintiff argues that the operation of the TSCA incinerator is governed by numerous state and federal safety regulations. Plaintiff points out that "the list of regulatory mandates include seven environmental laws, 14 sets of federal regulations, four state environmental laws, and EPA approval to dispose PCBs, six state permits and five DOE orders." However, plaintiff has not given an example of a single one of these regulatory mandates which the United States has violated. Thus, plaintiff has not satisfied the exception in *Berkovitz* where federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.

The second portion of the *Berkovitz* test requires that the discretion be "of the kind that the discretionary function exception was designed to shield." The court finds that all of the claims made by the plaintiff challenge conduct governed by discretion that is of the kind that the discretionary function exception was designed to shield; that is, policy decisions. The United States' decision to utilize an independent contractor to insure safety at the incinerator, its decision on how to monitor Lockheed Martin's actions in complying with various regulations, and the decision by DOE to either warn or to not warn the public about dangers from the emissions are all policy considerations. Under the circumstances, the discretionary function exception applies to all of plaintiff's claims against the United States.

## IV.

### *The Government Contractor Exception*

Even if the United States was not entitled to immunity under the discretionary function exception, it would still be entitled to immunity under this exception.

Under the FTCA, the United States is subject to liability for the negligence of an independent contractor only if it can be shown that the government had authority to control the detailed physical performance of the contractor and exercise substantial supervision over its day-to-day activities. *See United States v. Orleans*, 425 U.S. 807, 814–15, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). This exception is based on the language of the statute which provides that the United States is subject to liability for damages "caused by the negligent or wrongful act or omission of any employee of the Government...." 28 U.S.C. § 1346(b). The FTCA defines "employee of the Government" as any "employees of any federal agency...." 28 U.S.C. § 2671. "Federal agency" is defined as

> (e) Executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, that does not include any contractor with the United States.

*Id.* Thus, under the FTCA, the United States cannot be found liable for the negligence of its independent contractors. "[T]here must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual is acting as a government employee." *Laurence v. Department of Navy, United States*, 59 F.3d 112, 114 (9th Cir.1995).

■ Upon a review of the evidence, specifically the declaration of William Wistrom and the deposition testimony of Dr. Vince Adams, it is evident that there was not substantial supervision over the day-to-day operations of Lockheed Martin by the Department of Energy, particularly with respect to the operation of the TSCA incinerator. There were only two DOE employees at the TSCA incinerator from 1989 to 1997, and they monitored approximately 80 to 90 contractor employees in their daily operation of the incinerator. Dr. Adams testified that his practice was in accordance with DOE Order 5480.19,

**923**

which states that DOE supervision of LMES contract performance consists of "establishing written standards and operations, periodically monitoring and assessing performance, and holding personnel accountable for their performance."

The United States Supreme Court has indicated that detailed regulation and inspections are no longer evidence of an employee relationship. *See Orleans*, 425 U.S. at 815, 96 S.Ct. 1971. The ability to compel compliance with federal regulation does not change a contractor's personnel into federal employees. *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir.1987). The court concludes that the United States did not engage in substantial supervision over the day-to-day operations of Lockheed Martin with regard to the incinerator such that Lockheed Martin was acting as a government employee. Accordingly, the United States cannot be liable under any *respondeat superior* theory for any negligence on the part of Lockheed Martin.

### V.

#### Conclusion

In light of the foregoing, the court finds no allegations in the amended complaint of anything the United States did or did not do that was not attributable to its contractor Lockheed Martin or subject to the discretionary function exception. Therefore, the defendant United States' motion to dismiss plaintiff's amended complaint against it [Court File # 17] will be granted. In addition, the following actions will be taken with regard to other motions:

Plaintiff's motion for a temporary restraining order [Court File # 11] will be denied as moot;

The parties' joint motion for an extension of time in which to respond to defendant's motion to dismiss and reply to the same [Court File # 32] will be granted; and

Plaintiff's motion to file a deposition of Dr. Vince Adams in full [Court File # 36] will be granted.

Order accordingly.